## RANDOLPH *a.* GARVEY.

*New York Superior Court; Special Term, March,* 1860.

### MECHANICS' LIEN.—OWNER.

G., being owner in fee of four lots in the city of New York, agreed with F., by a contract in writing under seal, to sell such lots to him, and to make a building loan thereon, upon condition that if there were any failure on the part of F. to fulfil his part of the agreement, the interest of F., his heirs, and assigns in the premises should cease. The agreement provided that F. should build six houses on the lots, and that if there should be any mechanics' lien on the premises, G. might apply the advances to the payment thereof; and when the buildings were completed, G. was to convey to F. on payment of a sum specified.

*Held,* that neither F. nor one claiming under him by virtue of a second contract had, without fully performing the contract, any interest which is the subject of a mechanics' lien.

Trial by the court without a jury.

The facts are fully stated in the opinion.

*L. J. Goodale,* for the plaintiff.

*E. P. Clark,* for the defendant.

BOSWORTH, Ch. J.—The plaintiff brings this action to recover possession of a lot of land on the south side of Fortieth-street, between the Eighth and Ninth Avenues, in the city of New York, sixteen feet and eight inches wide, and one hundred feet deep, together with the dwelling-house standing thereon.

On and prior to the 6th day of September, 1855, Charles E. Grant owned in fee a parcel of land on the south side of Fortieth-street, commencing two hundred and eighty feet easterly of the southeast corner of Ninth Avenue and Fortieth-street, extending thence easterly one hundred feet on said street, being also about one hundred feet deep.

Charles E. Grant, by a written contract between him and William A. Foster, made and dated September 6, 1855, and sealed with their respective seals, contracted to sell said parcel of land

(described as being four lots) to William A. Foster, for $1900 per lot, being in all $7600.

William A. Foster agreed to erect on said four lots six dwelling-houses of brick (three stories high), to be worth, when completed, $4800 each, including the land on which it stood, and to be completed fit for occupation by the 15th day of February, 1856.

Grant also, thereby, agreed to loan to William A. Foster $6000, to be expended in erecting said buildings, viz., $1000 on each building; $3000 to be advanced when "each of the buildings was inclosed and the roof finished," and the other $3000 when "each building had the brown coat all on and the stair steps set."

The agreement to sell and convey, and to advance the $6000, is declared to be "upon the express condition that if there is any failure by the party of the first part (Wm. A. Foster) to fulfil in all and every respect the stipulations and agreements on the part" (of said Foster) "in manner and form, and in all times therein mentioned, that then and in that case the interest of the" (said Foster) "his heirs and assigns of, in, and to the said lots and each of them, and the said buildings thereon erected, or to be erected, and each and every of them, and every part and parcel thereof, shall cease and determine, and the right of the party of the first part (Grant), and his heirs and assigns therein and thereto, be as full and complete as if this" (the said) "agreement had not been made."

If there should be any mechanics' lien on the premises when any part of the $6000 (to be so advanced) was payable, Grant to be at liberty to satisfy the same, and the sums so paid were to be treated as so much of the said advance.

When the buildings were completed, Grant was to convey them to William A. Foster, on being paid in cash $13,600. If William A. Foster could not get a loan on said houses to two-thirds of their value, as designated by such agreement, Grant was to take a second mortgage of $3500 on all the houses and lots, payable in a year, in lieu of so much cash, provided that such mortgage and the prior mortgages did not amount (together) to more than two-thirds of such value.

Subsequently to the execution of said agreement, William A. Foster entered into a written agreement with Charles E. Foster

Randolph *a.* Garvey.

(on the same 6th day of September, 1855), by which Charles E. Foster was to purchase said lots from William A. Foster, and erect buildings thereon, and William A. was to advance money to Charles E., to enable him to build; the said agreement being in its terms substantially like that between Grant and William A. Foster, except that Charles E. Foster contracted to pay $2500 per lot.

Charles E. Foster immediately commenced the erection of said six buildings, but never completed but four of them. William A. Foster refused to advance to Charles E. all that he had agreed to do, alleging that he had no money, and that mechanics' liens had been put on the property; and Charles E., sometime in 1856, quit the premises.

Charles E. knew nothing of any contract between Grant and William A. Foster, until at or about the time of the refusal of William A. Foster to make further advances.

The plaintiff furnished lumber to Charles E. Foster to be used, and which was used, in the said buildings.

On the 22d day of November, 1855, the plaintiff filed with the clerk of the city and county of New York a notice under section 6 of the act (ch. 513) of 1851, of his claim, stating its amount at $404.37, and to be for materials furnished to Charles E. Foster, and naming him as the owner of these lots and of the buildings thereon. This claim was dated and sworn to November 21, 1855.

Such proceedings were had, that on the 25th day of March, 1857, the New York Common Pleas gave judgment that this lien be foreclosed, and that all the interest which Charles E. Foster had on the 22d day of November, 1855, in the said buildings, and the lots on which they stood, be sold, and that $486.55 be paid to the plaintiff out of the proceeds of the sale, in satisfaction of his claim, and the costs of such proceedings.

In June, 1857, the sheriff made a sale as directed by said judgment, and at such sale the plaintiff purchased Charles E. Foster's said interest in the premises in question. The sheriff's report of sale was filed June the 29th, 1857, and by a deed of the same date the sheriff conveyed to said plaintiff, as such purchaser, the interest of said Charles E. Foster in the premises, which he had on the 22d day of November, 1855.

Grant and wife, by deed of June the 20th, 1856, conveyed the premises to John A. Foster.

John A. Foster and wife, by deed of April the 16th, 1857, conveyed them to David L. Reed.

David L. Reed and wife, by deed of April the 18th, 1857, conveyed them to Horatio Wild; Wild bought without any actual notice of the existence of the alleged lien of the plaintiff, or of any proceedings in respect thereto, and paid $12,000, the consideration named in his deed for the premises in question, and an adjoining house and lot, and expended over $1200 on the two buildings, to put the same into good tenantable repair, and in introducing Croton water.

Horatio N. Wild and wife, by deed dated August 29, 1857, conveyed said premises to Z. R. Simmons.

Z. R. Simmons and wife, by deed dated October the 1st, 1857, conveyed the premises to Philip Fitzpatrick.

Fitzpatrick and wife, by deed dated October the 3d, 1857, conveyed the premises to Edward P. Clarke.

Edward P. Clarke, by lease dated January the 30th, 1858, leased the premises to the defendant for one year and three months from the 1st day of February, 1858.

Each of the seven deeds last named was acknowledged and recorded at or near the time of its date, and contains covenants of seizure and warranty.

The defendant entered into possession of the premises in question under the lease to him from Edward P. Clarke, and was in possession when this action was commenced, which was on the 18th day of February, 1858.

Before this action was commenced, and after the defendant was in possession, the plaintiff demanded of him the possession of the premises in question, which demand the defendant refused to comply with.

Even if it be assumed that Charles E. Foster had such an interest or property in the six buildings as would make him the owner thereof, within the meaning of chapter 513 of the act of 1851, and of the acts amending the same, in such sense that a lien was created upon his interest therein by the notice which the plaintiff filed on the 22d day of November, 1855, it does not follow that this action can be maintained.

Charles E. Foster never had any contract with Grant, the owner of the land, and he did not even know of Grant's ownership until about the time that his labors in the erecting of the buildings came to a stand.

But assuming that performance on his part of his contract with William A. Foster, would be in equity performance by the latter of his contract with Grant, still Charles E. Foster is not entitled even in equity to a conveyance of the premises in question, except on paying therefor in cash the contract price and the moneys advanced. He did not perform his contract. He finished only four of the six buildings. Two of the six he did not finish.

The legal title remained in Charles E. Grant, and was transferred by the several conveyances thereof, and ultimately vested in Edward P. Clarke, the defendant's lessor.

The extent of any interest and rights acquired by the plaintiff by his proceedings under the mechanics' lien law, was, at most, the right to be substituted in the place of Charles E. Foster, and to receive the benefits and advantages which his contract secured to him on performing the conditions, upon the performance of which his title to them was made by the agreement to depend.

The object of the act of 1851, as well as that of 1830 (ch. 330, and ch. 120 of *Laws of* 1832), is to reach, in the hands of the owner of the building, any balance which he may owe to his immediate contractor in respect thereof, by virtue of a contract between the two for the erection thereof. (Loonie *a.* Hogan, 5 *Seld.*, 435.)

The actual owner cannot be made to pay more than is due by the terms of his own contract, nor to pay upon any conditions other than those on which, by his contract, he is liable to pay. (Carman *a.* McIncrow, 3 *Kern. R.*, 70.)

Where labor is performed or materials furnished by virtue of or in pursuance of any contract or agreement with "the owner" of a building which is being erected or repaired, the filing of the prescribed notice (stating *inter alia* the alleged owner), creates "a lien for the value of such labor and materials upon such a house or building and appurtenances, and upon the lot of land upon which the same stand, to the extent of the right, title, and interest at that time existing, of such

owner in the manner and to the extent hereinafter provided." (3 *Rev. Stat.*, 5th ed., 812, § 82.)

In this respect, the act of 1851 goes further than the act of 1831. The former creates a lien on the building and lot, while the act of 1831 created no lien upon the lot.

Whether the plaintiff acquired a lien to the extent of only Charles E. Foster's interest, or to the extent of Charles E. Grant's interest, will make a great difference in his rights. The case of Ambony and Davis *a*. Jones (19 *N. Y. R.*, 234), illustrates this to some extent.

In that case a tenant erected a building, which he had a right to remove from the premises. It was held that the mechanics' lien could be created on such building, and that by purchasing the tenant's interest in such building at a sale on foreclosing the lien, the purchaser could remove it.

But the idea is not suggested that any lien was created on the lot on which such building stood, or that the purchaser acquired any other rights than those which the tenant possessed.

In the present case, Charles E. Foster never became, either legally or equitably, the absolute owner of the buildings in question.

He could not even become such equitable owner otherwise than by a full performance of his contract.

In Ambony *et al a*. Jones (*supra*), the building was absolutely that of a tenant.

What rights the plaintiff might have had, had he performed Charles E. Foster's part of the contract, or had he offered to do so, and had not been allowed to do it, is a question which does not now arise.

It seems to me quite clear that the legal title continued in Grant down to the time he conveyed to John A. Foster, and that it was subsequently vested in the defendant's lessor.

That Charles E. Foster never acquired the equitable title, and that on his failure to complete the buildings, Grant had a right to the possession, as against Charles E. Foster, and all persons succeeding to his interest merely.

That the defendant, instead of entering unlawfully into possession, and unlawfully withholding possession, entered lawfully and is entitled to retain possession.

The complaint must be dismissed.